# EXHIBIT A

Verified Complaint

Electronically Filed
1/22/2026 6:01 PM
Steven D. Grierson
CLERK OF THE COURT

Ross C. Goodman, Esq.
Nevada Bar No. 7722
GOODMAN LAW GROUP, P.C.
520 S. Fourth Street, Second Floor
Las Vegas, Nevada 89101
Telephone:   (702) 383-5088
Facsimile:    (702) 385-5088
ross@goodmanlawgroup.com
*Attorneys for Plaintiff*
*Shawne Merriman*

CASE NO: A-26-937793-C
Department 13

## DISTRICT COURT
## CLARK COUNTY NEVADA

| | |
|---|---|
| SHAWNE MERRIMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>A.R.I. AGENT, LLC, a Delaware limited liability company; and<br>A.R.I. SENIOR SECURED GROWTH CREDIT FUND, LP, DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants,<br><br>LIGHTS OUT XF, INC., a Delaware corporation, and LIGHTS OUT ENTERPISES, INC., a California corporation,<br><br>Nominal Defendants. | Case No.:<br>Dept. No.:<br><br>**VERIFIED COMPLAINT**<br><br>**Arbitration Exemption Requested:**<br>Action for Declaratory & Injunctive Relief and Damages in Excess of $50,000.00 |

Plaintiff Shawne Merriman, by and through undersigned counsel, alleges and complains against

Defendants A.R.I. Agent, LLC, and A.R.I. Senior Secured Growth Credit Fund, LP as follows:

## PARTIES

1.  Plaintiff Shawne Merriman ("Merriman") the founder, CEO and sole owners of Nominal

Defendant Lights Out XF, Inc., ("LXF") and Lights Out Enterprises, Inc. (collectively referred to as

Page 1 of 14

"Lights Out" or the "Company") is and was, at all relevant times, an individual residing in Clark County, Nevada.

2.   Defendant, A.R.I. Agent, LLC, a Delaware limited liability, and upon information and belief is conducting business in Clark County, Nevada.

3. Defendant, A.R.I. Senior Secured Growth Credit Fund, LP, Managing General Partner Zach Ellison ("Ellison"), principal place business St. Petersburg, Florida, and upon information and belief is conducting business in Clark County, Nevada.

4.   Nominal Defendant Lights Out XF, Inc., ("LXF") a Delaware corporation, is and was, at all relevant time authorized to conduct business in Clark County, Nevada.

5. Nominal Defendant Lights Out Enterprises, Inc., a California corporation, is and was, at all relevant time authorized to conduct business in Clark County, Nevada.

6. The names and capacities, whether individuals, corporate, associate, or otherwise of Defendants named herein as DOES and ROE CORPORATIONS are unknown or not yet confirmed. Upon information and belief, DOES and ROE CORPORATIONS defendants are responsible for damages suffered by Plaintiff and, therefore, Plaintiff sues defendants by such fictitious names. Plaintiff will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE CORPORATION defendants at such time as the same has been ascertained to Plaintiff.

**<u>JURISDICTION AND VENUE</u>**

7.   This Court possesses subject matter jurisdiction over this matter because Clark County, Nevada, is the judicial district in which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

8.   Venue is proper in the Eighth Judicial District Court because the facts and circumstances including business torts giving rise to the subject lawsuit occurred in Clark County, Nevada.

## **GENERAL ALLEGATIONS**

**A. *Shawne Merriman - Founder, Owner and Sole Board Member of "Lights Out"***

9. In 2019, former NFL All-Pro Shawne Merriman, founder of the "Lights Out" brand, launched Lights Out Xtreme Fighting ("LXF") MMA promotion.

10. LXF has recently signed agreements with leading sports media broadcasters, including ESPN, to distribute its content.

11. Lights Out Enterprises, Inc. owns LXF and Lights Out.

12. Lights Out Holdings owns the Intellectual property and trademarks to the "Lights Out" brand.

13. Merriman is the sole Member on the Board of Director and sole stockholder of the Company.

14. Merriman has run the day-to-day operations fueling Lights Out's growth and success.

15. A valuation analysis from December 22, 2025 projected the Company's financials will reach nearly $45 million dollars in revenue by 2035, with corresponding EBITDA of nearly $15 million - at a 33% EBITDA margin.

16. The same valuation determined the trademarks and brand assets owned and utilized by Lights Out (the "Lights Out Trademarks") is valued at $18,036,508 to purchase, $13,332,046 from a royalty approach, placing the midpoint valuation of the Lights Out Trademarks at $15,684,277.

**B. *The Lender Takeover of the Company by Displacing Merriman as CEO, Sole Director, and Stockholder Based on 3 Months of Interest Payments is Unconscionable***

17. On May 13, 2024, the Company entered a Loan and Security Agreement ("Loan Agreement" of "LSA"), with A.R.I. Senior Secured Growth Credit Fund, LP and its agent A.R.I. Agent LLC, (collectively referred to as "Lender") to borrow Two Million One Hundred Thousand Dollars ($2,100,000).

18. The Loan was secured by the Company's assets including intellectual property.

19. The Lender does not have any management or ownership rights in the Company.

20.  The Company missed three (3) months of interest payments between October and December 2025 totaling approximately $50,000.

21. In late 2025, Lender asserted alleged payment and covenant defaults.

22. The parties engaged in good faith negotiations concerning a short-term liquidity solution that would have cured alleged defaults and preserved operations.

22. The Loan Agreement preserves the Company's and Merriman's equity ownership and voting rights and contemplates secured-lender remedies consistent with Article 9 of the Uniform Commercial Code, including commercially reasonable disposition of collateral following a default.

23. On January 2, 2026, Lender issued a notice purporting to exercise default remedies under the Loan Agreement and, simultaneously, invoked proxy and attorney-in-fact provisions.

24.  Lender executed written consents *on behalf* of Merriman purporting to: (i) amend the Company's certificate of incorporation; (ii) remove Merriman from the board of directors; (iii) install Lender's principal, Zach Ellison, as the sole director; and (iv) clear the path for equity conversion and dilution.

25. Defendants and their principal then began holding themselves out to employees and third parties as controlling management of the Company, directing employees to report to them and issuing public statements announcing a change in leadership.

26. The proxy and attorney-in-fact provisions in the Loan Agreement are security devices intended to protect collateral value, not grants of managerial authority or ownership rights.

27. The Loan Agreement does not authorize Defendants to operate the Company, act as officers, displace management, or appropriate governance absent lawful foreclosure or court supervision.

**C.  *Lender's Unilateral Action Has Resulted in Irreparable Harm to the Company***

28. At no time did Defendants pursue a commercially reasonable sale, restructuring, or consensual resolution. Instead, Defendants escalated toward control-oriented enforcement designed to displace

Plaintiff and seize leverage through operational disruption.

29.    On January 8, 2026, Defendants issued a press release announcing Mr. Ellison's "appointment" as "Chairman of the Board, President & Chief Executive Officer" of Mr. Merriman's company.

30.    Since Defendants' wrongful taking over of Lights Out, the following has occurred: (i) Defendants blocked Plaintiff's access to Graphite, (ii) the CFO and accounting firm that maintains Lights Out's books and records, cutting Plaintiff off from financial oversight, budgeting, compliance, and payroll visibility, (iii) Defendants caused or participated in the issuance of a press release without Plaintiff's authorization, falsely implying a change in leadership and control, and (iv) this caused confusion among employees, fighters, sponsors, and business partners.

31. As lender pressure intensified and governance uncertainty grew, Lights Out's Chief Financial Officer resigned, citing instability and lack of clarity regarding authority.

32. Defendants unilaterally canceled a scheduled upcoming February 7 fight event, disrupting contracted bouts, sponsorship obligations, and anticipated revenue streams.

33. Defendants contacted a company named Office Beacon, a marketing entity with a personal relationship with Plaintiff, and instructed it to cease doing business with Light's Out, despite the fact that Office Beacon is not a Lights Out vendor and has never been paid by the Company.

34. Defendants' interference extended beyond company vendors to Plaintiff's personal and professional relationships, further evidence that their conduct was coercive rather than repayment focused.

35. Lights Out is party to a confidential long-term national media rights agreement with a major broadcaster. That agreement requires scheduled events to occur, operational continuity, authorized management, and reliable event execution.

36.    Defendant's unilateral cancellation of the February 7 event could cause breach of the media rights agreement and have placed this media relationship at serious risk, threatening termination or

suspension and causing irreparable harm.

37. Defendants undertook these actions without conducting any sale process, valuation, or other commercially reasonable disposition of the pledged equity.

38. Defendants' conduct is intended to appropriate the Company and its upside value for themselves while extinguishing Merriman's equity interests.

39. The Company's business model depends on continuity of Merriman's leadership, trusted vendor relationships, and strict compliance with event scheduling and production obligations.

40. This wrongful takeover of the Company has resulted in impairing the Company's governance, disrupting its ongoing operations, and materially impairing the enterprise value of the Company.

41. Defendants' conduct has caused and continues to cause irreparable harm, including loss of executive leadership, operational instability, reputational damage, destruction of goodwill, loss of unique media opportunities, and jeopardy to third-party contracts.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief)**

42. Plaintiff incorporates every allegation in this Complaint as if fully set forth herein.

43. There exists a justiciable controversy between Mr. Merriman, on the one hand, and Lender, on the other, regarding its alleged role and ownership interest in Lights Out.

44. The proxy and attorney-in-fact provisions in the Loan Agreement are security devices intended to protect collateral value, not grants of managerial authority or ownership rights.

45. The Loan Agreement does not authorize Defendants to operate the Company, act as officers, displace management, or appropriate governance absent lawful foreclosure or court supervision.

46. This justiciable controversy is ripe for judicial determination since the Defendants have continually sought to invalidate and obstruct actions of the Company, its Board and shareholders.

47. Since there is no other readily available remedy for the Company at this time, the Company seeks and is entitled to relief pursuant to NRS 30.010 *et seq.*, in the form of a declaration that says, among other things, that Lender is not an officer, director, or owner of Lights Out and Lender's unilateral actions are *ultra vires*, void, and/or otherwise invalid.

48. By reason of the foregoing, a judicial declaration is necessary and appropriate at this time and under the circumstances

49. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of his attorney fees and court costs.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

50. Plaintiff incorporates every allegation in this Complaint as if fully set forth herein.

51. To the extent the Loan Agreement is determined to be a valid and existing contract, Plaintiff is entitled to enforce the terms thereof.

52. Plaintiff performed under the Loan Agreement except to the extent such covenants, conditions, and obligations were waived, excused, or rendered impossible by Lender's wrongful conduct.

53. Under the terms of the Loan Agreement, Lender is required to preserve the Company's and Merriman's equity ownership and voting rights.

54. The Loan Agreement contemplates secured-lender remedies consistent with Article 9 of the Uniform Commercial Code, including commercially reasonable disposition of collateral following a default.

55. Lender materially breached the Loan Agreement by, without limitation, wrongfully taking over the management, operations, and ownership interests of Lights Out and not taking commercially reasonable steps to dispose of the collateral.

56. As a direct and proximate result of Lender's breaches, Plaintiff has been damaged in excess of $15,000 in an amount to be proven at trial.

57. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney fees and court costs.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Covenant)

58. Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

59. In the event the Loan Agreement is a valid and existing contract, it contains an implied covenant of good faith and fair dealing by and between the parties, and Lender had a duty to deal with Plaintiff in good faith which prohibits Lender from engaging in activity or conduct designed to prevent Plaintiff from receiving the benefits of the contract or depriving the other party of its justified expectations thereunder.

60. Lender did not intend to perform under the Loan Agreement depriving Plaintiff of the benefits of the Loan Agreement.

61. Plaintiff fully performed each and every covenant, condition, and obligation under the Loan except to the extent such covenants, conditions, and obligations were waived, excused, or rendered impossible by Lender's wrongful conduct.

62. Lender breached the covenant of good faith and fair dealing by *inter alia* by, without limitation, wrongfully taking over the management, operations, and ownership interests of Lights Out and not taking commercially reasonable steps to dispose of the collateral.

63. As a result of Lender's conduct, Plaintiff's justified expectations under the Loan Agreement were denied.

64. As a direct and proximate result of Lender's breaches, Plaintiff has been damaged in excess of $15,000 in an amount to be proven at trial.

65. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney fees and court costs.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

66.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

67.    At all relevant times described herein, Lender owed fiduciary duties to Lights Out, the Board of Directors, and Mr. Merriman individually.

68. Lender breached its fiduciary duties in the following ways, which include, but are not necessarily limited to: (i) circumventing the Bylaws and the Board of Directors; (ii) refusing to acknowledge Mr. Merriman's director status; (iii) refusing to acknowledge Mr. Merriman's status as CEO and officer of Lights Out; (iv) wrongfully taking Mr. Merriman's ownership interest; (v) locking Mr. Merriman out of Lights Out management and operations; (vi) publishing false and misleading information about Lights Out current management, and corporate governance with third parties; and (vii) acting *ultras vires*, and such actions are void or otherwise invalid.

69. As a result of Lender's conduct, Plaintiff and Lights Out have sustained damages in excess of $15,000 and in an amount to be proven at trial.

70. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney fees and court costs.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

71.    Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

72.    Valid and existing contracts between Plaintiff, Lender, Lights Out and third parties existed.

73.    Lender had knowledge of the contracts or had reason to know of their existence.

74.    Lender committed intentional acts intended or designated to disrupt the contractual

relationships or to cause the contracting parties to breach the contract to include among other things: (i) blocking Plaintiff's access to Graphite, (ii) Lights Out's Chief Financial Officer resigned, citing instability and lack of clarity regarding authority, (iii) cutting Plaintiff off from financial oversight, budgeting, compliance, and payroll visibility, (iv) Defendants caused or participated in the issuance of a press release without Plaintiff's authorization, falsely implying a change in leadership and control, and (v) this caused confusion among employees, fighters, sponsors, and business partners.

75. Defendants unilaterally canceled a scheduled upcoming February 7 fight event, disrupting contracted bouts, sponsorship obligations, and anticipated revenue streams.

76. Actual disruption of the contracts occurred caused by the wrongful and unjustified conduct of Defendants.

77. As a direct and proximate result of Defendants' intentional interference with Plaintiff's and Lights Out contractual relations, Plaintiff and Lights Out have been damaged in excess of $15,000, in an amount to be proven at trial.

78. As a direct and proximate result of Defendants' intentional interference with Plaintiff's and Lights Out contractual relations, which was characterized by oppression or malice, express or implied, Plaintiff is entitled to an award of punitive damages, in an amount to be proven at trial.

79. Plaintiff has been forced to incur attorney fees and costs to bring this action, and Plaintiff is entitled to recover its reasonable costs and attorney's fees incurred under the law.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

80. Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

81. Plaintiff and Lights Out enjoys prospective economic relationships with third parties.

82. Lender had or has knowledge of these prospective relationships.

83. Defendants contacted a company named Office Beacon, a marketing entity with a personal relationship with Plaintiff, and instructed it to cease doing business with Light's Out, despite the fact that Office Beacon is not a Lights Out vendor and has never been paid by the Company.

84. Defendants intended to harm Mr. Merriman and Lights Out by preventing these relationships as set forth herein.

85. No privilege or justification for Lender's conduct exists.

86. Lender's conduct was malicious and committed with reckless disregard to the rights of Plaintiff and Lights Out.

87. As a direct and proximate result of Lender's actions, Plaintiff and Lights Out has been damaged in an amount in excess of $15,000.00.

88. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney fees and court costs.

## SIXTH CLAIM FOR RELIEF

### (Conversion)

89.  Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

90. Defendants committed distinct acts of dominion wrongfully exerted over Plaintiff and Lights Out property.

91.  Lender has unilaterally and without requisite Company and Board approval, awarded itself property belonging to the Company, namely shares of stock in the Company belonging to Merriman.

92. Defendants' acts were and continue to be in denial of, or inconsistent with, Plaintiff and Lights Out's title or rights in the property.

93. As a direct and proximate result of Defendants' conversion, Plaintiff and Lights Out have been damaged in excess of $15,000, in an amount to be proven at trial.

94. As a direct and proximate result of the willful, wanton, or reckless conversion of such property, Plaintiff and Lights Out are entitled to an award of punitive or exemplary damages, in an amount to be proven at trial.

95. Plaintiff and Lights Out have been forced to incur attorney's fees and costs to bring this action, and Plaintiff and Lights Out are entitled to recover its reasonable costs and attorney's fees incurred.

## SEVENTH CLAIM FOR RELIEF

### (Injunctive Relief)

96.  Plaintiff incorporates every allegation of this Complaint as if fully set forth herein.

97. Based on Defendants' wrongful conduct alleged herein, Plaintiff is reasonably likely to succeed on the merits of his claims asserted herein.

98. Based on Defendants' wrongful conduct alleged herein, Plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commissions or continuance of the acts by Defendant complained of herein, either for a limited period or perpetually.

99.  Based on Defendants' wrongful conduct alleged herein, the commissions or continuance of the acts by Defendant alleged herein, during the litigation, would produce great or irreparable injury to Plaintiff, which cannot adequately be remedied by compensatory damages.

100. The nature or type of Plaintiff's injuries caused by Defendants' wrongful conduct as alleged herein cannot be fully compensable by money damages and/or are such that renders Plaintiff's damages difficult to calculate.

101. Defendants are doing or threatening, or are about to do, or are procuring or suffering to be done, acts in violation of Plaintiff's rights respecting the subject of this action, and tending to render the judgment ineffectual.

102. Based on Defendants' wrongful conduct alleged herein, Plaintiff is entitled to a temporary, preliminary, and permanent injunction enjoining Defendants, and any person(s) acting on their behalf,

from acting as an officer, director, or owner of Lights Out, taking over Plaintiff's shares/ownership interest, and any actions that are *ultra vires*, void, and/or otherwise invalid, prohibiting Defendants from otherwise interfering with business operations, employees, vendors, events, financial systems, and third-party relationships; restore Plaintiff's access to financial and accounting systems, and to send a retraction to the outlets the published articles flouting Lender's takeover or holding themselves out as company management;

103. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney fees and court costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. For a general damages award in excess of $15,000;

2. For declaratory relief as set forth above;

3. For injunctive relief as set forth above;

4. For punitive damages according to proof;

5. For an award of special damages pursuant to NRCP 9(g).

5. For pre- and post-judgment interest as allowed by law;

6. For an award of reasonable attorney fees and costs of suit; and

7. For any further relief the Court deems to be just and proper.

Dated this 22nd day of January 2026.

GOODMAN LAW GROUP, P.C.

 */s/ Ross C. Goodman, Esq.*
Ross C. Goodman, Esq.
Nevada State Bar No. 7722
520 S. Fourth St., Second Floor
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*
*Shawne Merriman*

**VERIFICATION**

Shawne Merriman declares that:

I have read the foregoing Verified Complaint and know its contents.  To the best of my knowledge, the matters stated therein are true, except to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated this 22nd day of January 2026.

DocuSigned by:

Shawne Merriman

7736BAFA3053458...

Shawne Merriman